UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SCOTT RODBOURN,

Plaintiff,

-vs-

STEUBEN COUNTY,

Defendant.

25-CV-6264 (MAV)

DECISION & ORDER

## INTRODUCTION

Plaintiff Scott Rodbourn initiated this case by filing a complaint on May 19, 2025, alleging age discrimination, harassment, and retaliation by his employer, the Steuben County Sheriff's Office (SCSO). ECF No. 1.

Defendant Steuben County filed a motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's claims are untimely and that Plaintiff failed to state a claim. ECF No. 8. Plaintiff responded in opposition to the motion to dismiss, ECF No. 11, and Defendant filed a reply, ECF No. 13.

For the following reasons, Defendant's motion to dismiss is granted in part and denied in part. Defendant shall answer the complaint on or before December 4, 2026.

## BACKGROUND

The SCSO hired Plaintiff as a Corrections Officer in 2000, and he became a Court Officer in 2005. ECF No. 1 at 3. Plaintiff was 60 years old in 2025 and was the most senior full-time Court Officer. ECF No. 1 at 3.

Sergeant Vincent Fanzo became Plaintiff's supervisor in January 2019. ECF

No. 1 at 3. Plaintiff alleged that at least 25 times, Fanzo made "age-related discriminatory comments to Plaintiff" beginning in 2019 and continuing "to date." ECF No. 1 at 4. The comments included: "[y]ou have been around a long time," "[y]ou're f***ing old," "you probably can't even get it up anymore," and "you probably have gray pubes." ECF No. 1 at 4.

Plaintiff alleged that "[s]hortly after" the comments began, he began being treated worse at work. ECF No. 1 at 4. He wanted to become a Field Training Officer, but was denied that promotion in favor of younger officers. ECF No. 1 at 5–6. He consistently expressed willingness to take on overtime hours, but was denied the opportunity in favor of younger officers. ECF No. 1 at 6–7. Finally, Plaintiff was reassigned from a courtroom where he had worked for over 10 years, and replaced with younger officers. ECF No. 1 at 7. Fanzo reassigned him to "low traffic areas" in the building instead, which Fanzo said were for "the slugs." ECF No. 1 at 8. Plaintiff was then reassigned to Corning City Court, which was supposed to be temporary but became permanent. ECF No. 8. Plaintiff's requests to remain at his previous location were denied. ECF No. 1 at 8. Corning City Court was "substantially further" from Plaintiff's home, and his requests to use a county vehicle and to be reimbursed for mileage were denied. ECF No. 1 at 9.

Plaintiff also alleged that one of his coworkers complained of discrimination and sexual harassment in the workplace, and he participated in the investigation by giving an interview in August 2023. ECF No. 1 at 10–12. Plaintiff alleged that shortly after his interview, in the same month, his coworkers began calling him a "rat,"

insulted him in group text messages, and ignored him. ECF No. 1 at 12–15. He further alleged that Fanzo was suspended and "suspected Plaintiff was involved." ECF No. 1 at 14. Fanzo allegedly said that he would be a "dick" when he returned and told Plaintiff that he would take Plaintiff to court. ECF No. 1 at 14. Sheriff Jim Allard told Plaintiff that he had to attend basic training, which Plaintiff had already completed, was "typically for new hires only," and which lasted seven months. ECF No. 1 at 15. Plaintiff filed an internal complaint alleging retaliation on March 5, 2024. ECF No. 16. He claimed that Defendant made personnel complaints against him in response, which were false. ECF No. 1 at 16. He finally alleged that the SCSO continued to deny him overtime as retaliation. ECF No. 1 at 16.

Plaintiff filed a complaint against the SCSO with the Equal Employment Opportunity Commission ("EEOC") on May 31, 2024. ECF No. 1 at 2. He initiated this case by filing a complaint on May 19, 2025. He raised claims of hostile work environment and discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), retaliation in violation of Title VII of the Civil Rights Act (42 U.S.C. § 2000e), and hostile work environment, discrimination, and retaliation in violation of the New York State Human Rights Law ("NYSHRL"), specifically New York State Executive Law § 296. ECF No. 1 at 16–26.

Defendant filed a motion to dismiss on July 7, 2026, ECF No. 8, Plaintiff responded in opposition on August 4, 2025, ECF No. 11, and Defendant filed a reply in further support of its motion on August 11, 2025, ECF No. 13.

## LEGAL STANDARD

A motion under Rule 12(b)(6) seeks dismissal for the "failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion to dismiss, the Court "accept[s] all 'well-pleaded factual allegations' in the complaint as true." *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "This presumption of truth, however, does not extend to legal conclusions." *Khan v. New York State Dep't of Health*, No. 1:25-CV-950 (MAD/ML), 2026 WL 2150349, at *3 (N.D.N.Y. July 27, 2026).

In deciding a Rule 12(b)(6) motion to dismiss, "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch*, 952 F.3d at 75.

## DISCUSSION

### I. Timeliness

Defendant argues that Plaintiff's ADEA claims are untimely because his EEOC complaint was not filed within 300 days after the alleged acts occurred. ECF No. 8-1 at 8–9. Defendant further argues that Plaintiff's claims under the NYSHRL based on conduct that occurred before May 19, 2022 are untimely under the three-year statute of limitations. ECF No. 8-1 at 9. Finally, Defendant argues that Plaintiff's allegations of incidents occurring before February 18, 2024 are time-barred based on the statute of limitations applicable to NYSHRL claims brought against a county. ECF No. 8-1 at 9–10 (citing Gen. Mun. Law § 50-i(1)(c)).

Plaintiff responds that statute of limitations is an affirmative defense, and

dismissal is not appropriate on a motion to dismiss unless all of the allegations in the complaint are clearly time-barred. ECF No. 11 at 8 (citing *Scott v. Cayuga Cnty. Civ. Serv. Comm'n*, No. 5:24-CV-00802, 2025 WL 472681, at *4 (N.D.N.Y. Feb. 12, 2025)). Plaintiff further argues that the ADEA claims are timely under the continuing violation doctrine because the alleged discrimination continues. ECF No. 11 at 9–11. Regarding the NYSHRL claims, Plaintiff argues that the EEOC complaint tolled the statute of limitations. ECF No. 11 at 11–12. Finally, Plaintiff argues that his NYSHRL claims are timely because they are ongoing. ECF No. 11 at 12–13.

**A. ADEA claims**

"In New York, a plaintiff suing under the ADEA (as well as under Title VII and the ADA) must file an administrative charge of discrimination with the EEOC [or the New York State Division of Human Rights ('NYSDHR')] no more than 300 days after the alleged discriminatory act to maintain an action in federal court." *Lewis v. Kaleida Health*, No. 20-CV-1860-LJV, 2021 WL 2592341, at *6 (W.D.N.Y. June 24, 2021) (internal quotation and citation omitted); *see* 42 U.S.C. § 2000e–5(e)(1).

"This statutory requirement is analogous to a statute of limitations." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).

Plaintiff pleaded that he filed an EEOC complaint against the SCSO on May 31, 2024. ECF No. 1 at 2. As such, his ADEA claims are timely if the alleged discriminatory events took place on or after August 5, 2023. *See Lewis*, 2021 WL 2592341, at *6.

Defendant limits this argument to Plaintiff's federal ADEA claims. *See* ECF

No. 8-1 at 8–9.[1] Plaintiff raises a cause of action for hostile work environment under the ADEA (claim one) and for discrimination under the ADEA (claim three). ECF No. 1 at 16–21.

Beginning with hostile work environment, Plaintiff argues that the continuing violation doctrine applies, making his claim timely. ECF No. 11 at 10–11. The Court agrees. "Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *overruled on other grounds by*, *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105 (2d Cir. 2015).

"The Supreme Court has explained that, as long as any act contributing to the hostile work environment claim falls within the 300-day period, 'the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" *Zoulas v. New York City Dep't of Educ.*, 400 F. Supp. 3d 25, 50 (S.D.N.Y. 2019) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002), *superseded by statute on other grounds*, 42 U.S.C. § 2000e-5(e)(3)). "Thus, in hostile work environment cases, an 'offensive incident within the limitations period permits consideration of an incident preceding the limitations period . . . if the incidents are sufficiently related.'" *Caravantes v. 53rd St. Partners, LLC,* No. 09–CV–

[1] Any suggestion that Plaintiff's retaliation claim is untimely fails, as Plaintiff participated in a protected activity on August 4, 2023, and the alleged retaliation occurred thereafter, within 300 days of the May 31, 2024 EEOC complaint. ECF No. 1 at 2, 12.

7821 (RPP), 2012 WL 96474, at *7 (S.D.N.Y. Jan. 12, 2012) (quoting *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010)).

Here, Plaintiff alleged in the complaint that his supervisor made "age-related discriminatory comments to Plaintiff," which began in 2019 and "continue to date." ECF No. 1 at 4. "To date" presumably refers to when the complaint was filed in May 2025.

The continuing violation doctrine applies. The ongoing nature of the comments means that some of them were said within 300 days of the EEOC complaint. Moreover, the comments were sufficiently related because they were said by the same person to Plaintiff and all involved Plaintiff's age. *See Morgan*, 536 U.S. at 120–21 ("Although many of the acts upon which his claim depends occurred outside the 300 day filing period, we cannot say that they are not part of the same actionable hostile environment claim."); *Dash v. Bd. of Educ. of City Sch. Dist. of New York*, 238 F. Supp. 3d 375, 389 (E.D.N.Y. 2017) ("Because some of the events plaintiff pleads . . . took place after [300 days before the EEOC complaint] and are part of a continuing violation, plaintiff may proceed with a hostile work environment claim, regardless of whether the acts complained of occurred before or after [that date]."); *cf. Taylor v. City of New York*, 207 F. Supp. 3d 293, 301 (S.D.N.Y. 2016) (finding that incidents involving different people were not sufficiently related for purposes of the continuing violation doctrine). As such, Plaintiff's hostile work environment claim is timely. *See, e.g.*, *Zoulas*, 400 F. Supp. 3d at 50–51.

Regarding discrimination, Plaintiff alleges that he was overlooked for

promotions, denied overtime, and reassigned to a less desirable court. ECF No. 1 at 4. Each of these alleged adverse actions is treated separately for purposes of the 300-day time period. *See Morgan*, 536 U.S. at 113 ("Each discrete discriminatory act starts a new clock for filing charges alleging that act."). The complaint does not specify when Plaintiff was overlooked for a promotion and instead characterizes it as occurring "continuously." ECF No. 1 at 4–5. This is sufficient at this stage of the proceedings. Statute of limitations is an affirmative defense, so "[d]ismissal is proper only when, drawing all reasonable inferences in favor of the plaintiff, the court concludes that the plaintiff's own factual allegations prove the defendant's statute of limitations defense." *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 157 (E.D.N.Y. 2010); *see, e.g.*, *Taylor*, 207 F. Supp. 3d at 300 (declining to dismiss "the claims that are timely and those that are undated").

Regarding the alleged denial of overtime, Plaintiff alleges that he was denied overtime beginning in 2019, that he was specifically denied overtime on October 25, 2019, that he filed a formal grievance relating to the denial of overtime on October 29, 2019, that the "[d]enial of overtime opportunities has continued for years," and that he specifically sought overtime in June 2024, but it was given to a different officer instead. ECF No. 1 at 6–7. The allegation regarding the denial in October 2019 is untimely, but may be relevant to inform the timely allegations. *See Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("expiration of the limitations period does not bar an employee from using the prior acts as background evidence in support of a timely claim.") (internal quotations and citation omitted). The allegation

regarding June 2024 is within the 300-day window and is therefore timely. Plaintiff is free to attempt to develop other potentially timely denials of overtime during discovery, due to the characterization that such denials were ongoing after 2019.

Finally, Plaintiff alleged that he was temporarily reassigned to Corning City Court, a less desirable rotation, in June 2023. ECF No. 1 at 8. While the initial assignment is time-barred as a discrete act, Plaintiff also pleaded that the assignment later became permanent, that his requests to remain at his prior location were "repeatedly denied," that his requests for use of a company car or gas mileage were denied, and that he has made 170 trips to Corning since his reassignment. ECF No. 1 at 8–9. The discrete acts of denying Plaintiff's subsequent requests could have fallen within the 300-day window as characterized if they occurred after August 5, 2023, and as such the Court will not dismiss them at this stage of the litigation. *See McGullam*, 609 F.3d at 76–77 (reasoning on summary judgment that "the statute of limitations is an affirmative defense, and the defendant has not tried to find out whether [Plaintiff] can date the incident"); *Zoulas*, 400 F. Supp. 3d at 50 ("Examples of discrete acts, for the purposes of the continuing violation doctrine, include . . . denial of a preferred job position.").

In sum, the Court does not conclude that Plaintiff's ADEA claims are time-barred at this stage in the litigation, with the exception of the discrimination claim involving the denial of overtime in 2019 and the initial reassignment in June 2023.

**B. NYSHRL claims**

Defendant argues that Plaintiff's NYSHRL claims are time-barred under the

applicable three-year statute of limitations and separately argues that they are time-barred under state law procedural requirements (*see* N.Y. Cnty. L. § 52(1); N.Y. Gen. Mun. L. § 50–i(1)(c)), which require commencement of an action within one year and 90 days. ECF No. 8-1 at 9–10. Plaintiff responds that his claims are timely, and seems to acknowledge that he was required to commence his NYSHRL claims within one year and 90 days of the incidents alleged. ECF No. 11 at 12 (citing CPLR 217–a).

Ordinarily, "NYSHRL claims have a three-year statute of limitations." *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 446 (S.D.N.Y. 2023); *see* N.Y. Exec. L. § 297(5). Because Plaintiff sued a county, however, County Law § 52(1) applies. *See Anderson v. Nassau Cnty. Dep't of Corr.*, 558 F. Supp. 2d 283, 302–03 (E.D.N.Y. 2008) (claims filed against a county under the NYSHRL are subject to the requirements of County Law § 52(1)).

County Law § 52(1) states that all claims must "be commenced pursuant to the provisions of" General Municipal Law § 50–i. General Municipal Law § 50–i(1) sets a shorter statute of limitations of one year and 90 days. *See* N.Y. Gen. Mun. L. § 50–i(1)(c) ("the action . . . shall be commenced within one year and ninety days after the happening of the event"). This section applies "notwithstanding any inconsistent provisions of law." *Id.* at § 50–i(2).

Because the parties seemingly agree that a one year and 90 day statute of limitations applies to Plaintiff's NYSHRL claims, *see* ECF Nos. 8-1 at 10; 11 at 12, the Court does not consider the timeliness of those claims based on the three-year statute of limitations.

Plaintiff filed the complaint on May 19, 2025. ECF No. 1. As such, the incidents underlying the NYSHRL claims should have taken place on or after February 18, 2024 to be considered timely. *See* N.Y. Gen. Mun. L. § 50–i(1)(c).

The same analysis applies as discussed regarding Plaintiff's ADEA claims, except with a different applicable date (February 18, 2024). Plaintiff alleged that his supervisor made approximately 25 age-related discriminatory comments to him beginning in 2019 and continuing to the 2025 complaint. ECF No. 1 at 4. Plaintiff's hostile work environment claim under the NYSHRL is therefore timely under the continuing violation doctrine. *See Morgan*, 536 U.S. at 120–21; *Dash*, 238 F. Supp. 3d at 389; *see also Taylor*, 207 F. Supp. 3d at 302 ("[T]he continuing violations doctrine of the NYSHRL mirrors that of Title VII.").

Some of Plaintiff's discrimination claims under the NYSHRL survive Defendant's motion to dismiss. Plaintiff did not provide a specific date he was overlooked for a promotion, other than to say it happened "continuously." ECF No. 1 at 4–5. This gives rise to the inference that Plaintiff was overlooked for a promotion within the time period, and at this stage of the case, the Court "draw[s] all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); *see also Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000) ("Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief.").

Regarding the alleged denial of overtime, ECF No. 1 at 6–7, the allegation regarding the denial in October 2019 is untimely under the statute of limitations from

General Municipal Law § 50–i(1). Plaintiff may proceed regarding the allegations of denials of overtime that occurred on or after February 18, 2024, including the June 2024 denial.

Plaintiff's initial reassignment occurred in June 2023, and the related NYSHRL claim is therefore untimely under General Municipal Law § 50–i(1). *See* ECF No. 1 at 8. However, as with Plaintiff's ADEA claims, Plaintiff's NYSHRL claims can proceed to discovery to attempt to prove that Plaintiff's subsequent related requests for reassignment, mileage, or a company car were denied within the statute of limitations. *See* ECF No. 1 at 8–9; *Zoulas*, 400 F. Supp. 3d at 50 ("denial of a preferred job position" is a discrete act).

Finally, Plaintiff's NYSHRL retaliation claims involved conduct beginning in 2023 and occurring throughout that year. *See* ECF No. 1 at 12–14. Those claims are untimely. Plaintiff also alleged retaliation in the form of having to undergo basic training, which lasted through July 2024. ECF No. 1 at 15. That claim is timely as occurring after February 18, 2024, as is Plaintiff's claim of retaliation in response to his March 5, 2024 internal complaint. *See* ECF No. 1 at 16.

Overall, the Court denies the motion to dismiss Plaintiff's claims as untimely, with the exception of the alleged October 2019 denial of overtime, June 2023 initial reassignment, and retaliation in 2023 under the NYSHRL. Plaintiff may not continue with his ADEA or NYSHRL claim relating to the October 2019 denial of overtime or his initial courthouse reassignment in June 2023, and may not proceed on retaliation under NYSHRL for events that Plaintiff alleged occurred in 2023. Those incidents

may still be relevant to attempt to establish a discriminatory intent, however. *See Davis-Garett*, 921 F.3d at 42.

## II. Sufficiency of complaint

Defendant further argues that Plaintiff's claims should be dismissed for failure to state a claim. ECF No. 8-1 at 11–21. Plaintiff responds that his complaint adequately states claims of discrimination, hostile work environment, and retaliation. ECF No. 11 at 13–30. The Court agrees with Plaintiff.

### A. ADEA discrimination.

Defendant argues that Plaintiff fails to state a claim of ADEA discrimination because he did not allege a materially adverse employment action. ECF No. 8-1 at 11–14. Defendant argues that the denial of overtime and reassignment are not sufficient, and further argues that Plaintiff did not explain how younger employees were allegedly treated better than he was. ECF No. 8-1 at 11–14.

Plaintiff responds that he alleged adverse employment actions of being overlooked for promotions, being denied overtime, and being transferred to a less desirable position, which constitute adverse employment actions under *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). ECF No. 11 at 13–16. Plaintiff further argues a temporal link between the allegedly derogatory comments made by his supervisor and the adverse employment actions, that he identified how younger employees were treated better, and that he met his "minimal" pleading requirement regarding an inference of discrimination. ECF No. 11 at 16–19 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 313 (2d Cir. 2015)).

"To establish a prima facie case, a plaintiff with an age discrimination claim must show '(1) that [ ]he was within the protected age group, (2) that [ ]he was qualified for the position, (3) that [ ]he experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination.'" *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)).

Here, Plaintiff pleaded that he was within the protected age group (60 years old) and was highly qualified for the position with positive reviews. ECF No. 1 at 3. Defendant does not dispute the adequacy of Plaintiff's pleading regarding the first two elements.

Regarding the third element of an adverse employment action, "[a] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).

Here, Plaintiff pleaded adverse employment actions including that he was overlooked for promotions, was denied overtime, and was reassigned to a less-desirable court. ECF No. 1 at 4–9. Defendant argues that a change in working conditions has to be accompanied by a demotion to be considered materially adverse. ECF No. 8-1 at 13. Plaintiff specifically pleaded that his reassignment was to a courthouse that was further away from his house, which caused him to drive more

without being reimbursed for mileage, was "low traffic," and was known to be undesirable as for "the slugs." No. 1 at 8–9. Plaintiff also pleaded that he was overlooked for promotions, including to a Field Training Officer, which came with an "additional yearly stipend." ECF No. 1 at 5. He was also denied taser training, which would have provided additional safety. ECF No. 1 at 5. Moreover, he pleaded that he was denied overtime, "and thus he suffered decrease in pay." ECF No. 1 at 6.

These events can constitute adverse employment actions and satisfied Plaintiff's pleading burden. *See Terry v. Ashcroft*, 336 F.3d 128, 145 (2d Cir. 2003) (reversing grant of summary judgment on retaliation claim because "[a] reasonable trier-of-fact . . . could conclude that the inability to ride in a government-owned vehicle was a sufficiently adverse employment action where it would require plaintiff to undertake an allegedly much more taxing commute than would otherwise have been possible"); *Roache v. Long Island R.R.*, 487 F. Supp. 3d 154, 171 (E.D.N.Y. 2020) ("[T]he denial of opportunity to work overtime or earn greater responsibility may be considered sufficiently adverse to support a discrimination claim."); *Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 223–24 (E.D.N.Y. 2014) (the denial of an "opportunity to earn additional compensation" constitutes an adverse employment action).

Defendant argues that denial of overtime and reassignment are insufficient to allege age discrimination without more. ECF No. 8-1 at 11–12. Here, in addition to alleging that he was denied overtime and reassigned, Plaintiff specifically alleged that the SCSO "offered overtime to younger" employees over him, and "replaced him

with younger" officers after his reassignment. ECF No. 1 at 6, 7. Plaintiff also alleged that his reassignment was to a less desirable courthouse that required him to drive further. ECF No. 1 at 8–9. That was sufficient to satisfy Plaintiff's pleading burden. *See Muldrow*, 601 U.S. at 354 ("whether the harm [of a transfer] is significant . . . can lie in the eye of the beholder").

Fourth, Plaintiff sufficiently pleaded an inference of discrimination. "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

Here, Plaintiff pleaded that his direct supervisor, who had the power to affect Plaintiff's employment, including by reassigning him, *see* ECF No. 1 at 8, made "at least" 25 derogatory comments to Plaintiff about Plaintiff's age. ECF No. 1 at 3–4; *see Quinones v. Basil Chevrolet, Inc.*, No. 1:25-CV-416 JLS (MJR), 2026 WL 805625, at *4 (W.D.N.Y. Jan. 9, 2026), *report and recommendation adopted*, No. 25-CV-416 (JLS) (MJR), 2026 WL 803402 (W.D.N.Y. Mar. 23, 2026) ("A plaintiff may satisfy the fourth element, namely an inference of discriminatory intent, by alleging verbal remarks that are probative of discrimination.").

Defendant suggests that the supervisor's comments were "stray derogatory remark[s]." ECF No. 8-1 at 11. "In determining whether a comment is a probative

statement that evidences an intent to discrimination or whether it is a non-probative 'stray remark,' courts consider the following factors: '(1) who made the remark, i.e., a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, i.e., whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, i.e., whether it was related to the decision making process.'" *Quinones*, 2026 WL 805625, at *4 (quoting *Rolon v. Pep Boys*, 601 F. Supp. 2d 464, 468 (D. Conn. 2009)). Here, the alleged statements were made repeatedly by a supervisor who was in charge of employment decisions, were clearly discriminatory, and began before and continued throughout the time of the employment decisions at issue. The factors weigh in favor of finding an inference of discrimination at this stage of the case.

Moreover, Plaintiff pleaded that younger employers were treated better than he was and were chosen for specialized training and overtime instead of Plaintiff. ECF No. 1 at 5–6. He also alleged that he was removed from his preferred courtroom assignment and replaced with younger officers. ECF No. 1 at 7. This was sufficient to establish an inference of discrimination at this stage of the proceedings. *See Littlejohn*, 795 F.3d at 312–13 ("[A]n inference of discrimination also arises when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000) ("[A] plaintiff has demonstrated an inference of age discrimination and thus established a *prima facie* case . . . where the majority of plaintiff's responsibilities

were transferred to a younger co-worker.").

Defendant argues that Plaintiff did not identify how younger employees were treated better and did not establish an inference of age-based discrimination. ECF No. 8-1 at 12. To the contrary, Plaintiff specifically alleged that younger employees replaced him in his desirable courtroom assignment, were chosen for overtime over him, and were chosen for specialized training. ECF No. 1 at 5–7. "At the pleadings stage, plaintiff has only a 'minimal burden' of alleging facts suggesting an inference of discriminatory motivation." *Quinones*, 2026 WL 805625, at *4 (quoting *Vega*, 801 F.3d at 85). Plaintiff has met that minimal burden here.

Defendant also argues that promotions were governed by Civil Service Law § 52, required a civil service exam, and Plaintiff did not plead that he took a civil service exam. ECF No. 8-1 at 11–12. Plaintiff did plead that he was qualified for the promotion, however. ECF No. 1 at 5. Plaintiff also pleaded that "Field Training Officer promotions are not subject to Civil Service Law § 61." ECF No. 1 at 5. The Court accepts Plaintiff's pleaded facts as true on a motion to dismiss. *See Iqbal*, 556 U.S. at 679.

Plaintiff sufficiently pleaded the elements of a discrimination claim under the ADEA, so Defendant's motion to dismiss that claim is denied.

**B. Hostile work environment**

Defendant argues that Plaintiff failed to adequately plead hostile work environment because stray remarks, reassignment, and the denial of overtime do not create a hostile work environment without additional facts about the frequency of

such events and facts tying them to Plaintiff's age. ECF No. 8-1 at 14–16.

Plaintiff responds that the comments from his supervisor did not constitute stray remarks and that they occurred alongside the adverse employment actions, which did not occur in isolation. ECF No. 11 at 19–22.

A hostile work environment exists "when the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment . . . .'" *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). "The analysis of the hostile working environment theory of discrimination is the same under the ADEA as it is under Title VII." *Id.*

"[U]nder the ADEA, '[a] work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it' because of conduct based on the plaintiff's over-40 age." *Davis-Garett*, 921 F.3d at 41 (quoting *Brennan*, 192 F.3d at 318). "Considerations include: (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance." *Brennan*, 192 F.3d at 319.

Here, Plaintiff pleaded that his supervisor made derogatory comments to Plaintiff relating to Plaintiff's age. ECF No. 1 at 4. The frequency of the comments is not clear from the complaint, as it states only that "at least" 25 comments were made beginning in 2019 and continuing until the complaint was filed in 2025. *See* ECF No.

1 at 4. The comments could be considered humiliating to Plaintiff. *See, e.g.*, ECF No. 1 at 4 (alleging that Plaintiff's supervisor told him, "you probably can't even get it up anymore"). In addition to the comments, Plaintiff pleaded adverse employment actions including denial of overtime, not receiving training, being passed over for promotions, and being reassigned to a less favorable courthouse. ECF No. 1 at 4–9. These actions, combined with the supervisor's allegedly offensive comments, were sufficient to plead a hostile work environment. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 241 (2d Cir. 2007) ("At the pleading stage of the case, however, plaintiffs need not plead a *prima facie* case of discrimination based on hostile work environment, so long as they provide in the complaint a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendant fair notice of plaintiffs' claim for hostile work environment and the grounds upon which that claim rests.").

**C. Title VII retaliation**

Defendant argues that Plaintiff failed to raise a claim of Title VII retaliation. ECF No. 8-1 at 16–17. Specifically, Defendant contends that isolation at work and forcing Plaintiff to undergo training did not constitute adverse employment actions. ECF No. 8-1 at 16.

Plaintiff responds that he needed to plead only that the alleged adverse action could "dissuade a reasonable worker from making or supporting a charge of discrimination," and that the actions he described satisfied that standard. ECF No. 11 at 22–24 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57

(2006)). Plaintiff further argues causation because he alleged that the actions occurred after he engaged in protected activity. ECF No. 11 at 24–25.

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Bucalo*, 691 F.3d at 129 (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).

"In 2006, . . . the Supreme Court in *White* ruled that Title VII's 'antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'" *Davis-Garett*, 921 F.3d at 43 (quoting *White*, 548 U.S. at 64). "Rather, a plaintiff may recover for retaliation by 'show[ing] that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *White*, 548 U.S. at 68) (emphasis omitted).

Here, Plaintiff alleged that he participated in a coworker's sexual harassment complaint by providing an interview and truthfully revealing what he knew about the situation. ECF No. 1 at 10–12. Plaintiff contended that the same month as his participation in the investigation, his coworkers began calling him a "rat." ECF No. 1 at 12. He alleged that his coworkers sent him "derogatory and homophobic text messages" in a group and ignored him on at least 10 occasions. ECF No. 1 at 14. Plaintiff's supervisor blamed Plaintiff for his own suspension. ECF No. 1 at 14.

Further, Plaintiff was required to complete basic training for seven months, which he had already completed and which was for new officers. ECF No. 1 at 15–16. Plaintiff then filed an internal complaint in March 2024, after which he alleged that Defendant made untrue personnel complaints against him, and that the SCSO continued to deny him overtime in retaliation. ECF No. 1 at 16.

Defendant cites *Danieu v. Teamsters Loc. 264*, No. 08-CV-00500S, 2011 WL 1259839, at *9 (W.D.N.Y. Mar. 31, 2011), which states that "ostracism and isolation at work is not enough to constitute an adverse employment action." The Supreme Court explained, however, that "[c]ontext matters." *White*, 548 U.S. at 69. For example, while "a supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight . . . to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination." *Id.*

Here, Plaintiff alleged that his coworkers ignored him, but also that they insulted him and called him a "rat," and that those comments were accompanied by management's actions of making him undergo training for seven months, filing complaints against him, and denying him overtime. ECF No. 1 at 12–16. In context, a reasonable employee may be dissuaded from engaging in protected activity when faced with such consequences.

Regarding causation, the alleged retaliation occurred after Plaintiff participated in protected activity in August 2023 and March 2024. ECF No. 1 at 12–

16. While the training did not begin until January 2024, five months after the protected activity in August 2023, the complaint does not clarify when the seven-month training was ordered. The complaint also alleges retaliatory conduct of personnel complaints and the denial of overtime in retaliation, after the protected conduct of filing an internal complaint in March 2024. *See* ECF No. 1 at 16. Additionally, Plaintiff alleged that his involvement in the protected activity "had serious consequences for Sheriff Allard," and that Allard was the one who required Plaintiff to repeat basic training. ECF No. 1 at 13, 15. Finally, the content of the comments that Plaintiff was a "rat" supported an inference of retaliatory intent. *See, e.g.*, *Deleon v. Sergeant Johnson*, No. 24-CV-8101 (KMK), 2026 WL 2925897, at *8 (S.D.N.Y. Sept. 29, 2026). Overall, while the timing between the protected activities and the alleged retaliatory actions is not completely clear, the complaint sufficiently alleges retaliatory intent at this stage of the case.

**D. NYSHRL Claims**

Defendant argues that Plaintiff did not state a claim for discrimination, hostile work environment, and retaliation under the NYSHRL because he did not plead an adverse action or inferior condition of work and did not allege a causal connection between the allegedly adverse actions and a desire to retaliate. ECF No. 8-1 at 17–21.

Plaintiff responds that the NYSHRL requires only that the plaintiff was treated "less well" because of a discriminatory intent, and that he satisfied that pleading requirement. ECF No. 11 at 26–27 (quoting *Lee v. Riverbay Corp.*, 751 F.

Supp. 3d 259, 275 (S.D.N.Y. 2024)). He further argues that the discriminatory actions began after the comments started. ECF No. 11 at 28. He made the same arguments regarding hostile work environment claims under the ADEA as the NYSHLR. ECF No. 11 at 28–29. Regarding retaliation, Plaintiff argued that the pleading standard is more lenient under the NYSHRL, and that he satisfied both. ECF No. 11 at 29–30.

As with the ADEA, under the NYSHRL, "a prima facie case of age discrimination consists of four elements: (1) the plaintiff's membership in a protected class; (2) the plaintiff's qualification for a particular position of employment; (3) an adverse employment action by the defendant employer; and (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation." *Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 170 (E.D.N.Y. 2017); *see also Scott*, 2025 WL 472681, at *10 ("[A]ge discrimination suits brought under the NYSHRL are subject to the same analysis as claims brought under the ADEA.") (internal quotations and citation omitted).

To establish a hostile work environment claim under the NYSHRL, Plaintiff "must show that h[is] workplace was 'permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011) (quoting *Harris*, 510 U.S. at 21).

Finally, under "the NYSHRL . . . '[a] plaintiff claiming retaliation must demonstrate that [ ]he took an action opposing h[is] employer's discrimination and

that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 (2d Cir. 2025) (quoting *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024)).

"The NYSHRL historically utilized the same standard as Title VII, but it was amended in 2019 to align with the [New York City Human Rights Law's] more liberal pleading standard." *Qorrolli*, 124 F.4th at 122–23. The 2019 amendment "render[ed] the standard for [NYSHRL] claims closer to the standard of the [New York City Human Rights Law]." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021); *see McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) ("[T]he NYSHRL was amended to direct courts to construe the NYSHRL, like the NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed.'") (quoting N.Y. Exec. L. § 300).

In sum, the pleading standards under the NYSHRL are the same or more liberal than the pleading standards under the ADEA and Title VII. The Court therefore concludes that Plaintiff stated claims under the NYSHRL for the reasons previously discussed in the analysis of claims under the ADEA and Title VII. *See, e.g., Reynolds v. City of Rochester*, No. 23-CV-6506-FPG, 2026 WL 2916621, at *12 (W.D.N.Y. Sept. 29, 2026).

## CONCLUSION

Upon careful consideration of the motion and responses thereto, the Court denies Defendant's motion to dismiss Plaintiff's claims as time-barred, with the exception of the overtly time-barred incidents of alleged discrimination. Specifically, Plaintiff may not continue with his ADEA or NYSHRL claim relating to the October 2019 denial of overtime or his initial courthouse reassignment in June 2023, and may not proceed on retaliation under NYSHRL for events that Plaintiff alleged occurred in 2023. Those incidents may still be relevant to attempt to establish a discriminatory intent, however. *See Davis-Garett*, 921 F.3d at 42.

Additionally, the Court concludes that Plaintiff sufficiently stated a claim for discrimination and hostile work environment under the ADEA, retaliation under Title VII, and discrimination, hostile work environment, and retaliation under the NYSHRL. As such, Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim is denied.

Therefore, for the foregoing reasons, it is hereby

ORDERED that Defendant's motion to dismiss based on untimeliness is DENIED, with the exception of Plaintiff's ADEA and NYSHRL claims relating to the October 2019 denial of overtime and his initial reassignment in June 2023, and his NYSHRL retaliation claim for events Plaintiff alleged occurred in 2023. It is further

ORDERED that Defendant's motion to dismiss for failure to state a claim is DENIED.

Defendant shall file an answer to the complaint on or before December 4, 2026.

SO ORDERED.

Dated: November 3, 2026
Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge